# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| SUMMIT CONTRACTING GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil No. 3:16-CV-17<br>Judge Aleta A. Trauger |
| ASHLAND HEIGHTS, LP, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM

The defendant, Ashland Heights, LP ("Ashland"), has filed a Motion to Dismiss (Docket No. 5), to which the plaintiff, Summit Contracting Group, Inc. ("Summit"), has filed a Response (Docket No. 10) and a Supplemental Response (Docket No. 19) in opposition. For the following reasons, the motion will be denied.

**I.     Background**

This is a construction dispute between a commercial general contractor (Summit) and an owner (Ashland) for the construction of an assisted living facility at 2035 Vantage Pointe, Ashland City, Cheatham County, Tennessee. The court focuses on the well-pleaded allegations in the Complaint. (Docket No. 1.) Summit is a Florida corporation with offices in Florida, but it is authorized to do business in Tennessee and is a fully-licensed Tennessee general contractor. Ashland is a limited liability partnership that owned the land that is the subject of this dispute and wished to construct a senior living facility, known as Vantage Point Village, at that location (the "Project").

1

A.      **Contract Between Ashland and Summit**

On September 16, 2013, Summit and Ashland entered into a construction contract for the Project (the "Contract"). The Contract provided that Summit would be the general contractor for the Project and perform the described "Work" for an initial lump sum price of $8,667,731.00, to be increased or decreased based on subsequent change orders. The Contract included provisions requiring incremental progress payments when Summit reached monthly Project completion milestones. When Summit was entitled to a progress payment for approved work on the Project each month, Ashland was required to pay by the 10th day of the following month if the pay request was received by the 25th of the preceding month. Ashland was further required to withhold from any progress payment 5% as "Retainage" until 50% of the Project was complete.[1] The Contract also provided that Summit was entitled to extended general conditions for the number of days that work is stopped due to inclement weather that exceeds 30 days. Finally, the Contract provided that Summit was entitled to 6% interest for payments which were untimely paid by Ashland. Finally, the Contract provides that, "[i]n the event that any litigation or other dispute resolution proceeding is commenced that involves, arises out of or relates to this

---

[1] The Contract was to be governed by Tennessee law, and Tennessee has a Prompt Pay Act and retainage laws, which are set out in Tenn. Code Ann. § 66-34-101, *et seq.* (the "Retainage Laws"). The Retainage Laws provide that, if a contract price is over $500,000, and retainage is withheld by an owner like Ashland, "that retained amount shall be deposited into a separate, interest bearing, escrow account with a third party which must be established upon the withholding of any Retainage." Tenn. Code Ann. § 66-34-104(a) and (i). The Retainage Laws also provide that, in the event the party withholding retainage "fail[s] to deposit the funds into an escrow account as provided herein, such party shall be responsible for paying the owner of the retained funds an additional three hundred dollar ($300.00) penalty per day for each and every day that such retained funds are not deposited into such escrow account." Tenn. Code Ann. § 66-34-104(c). Compliance with these requirements concerning retainage "shall be mandatory, and may not be waived by contract." Tenn. Code Ann. § 66-34-104(j).

contract, the prevailing party shall be entitled to an award of taxable court costs, other related but non-taxable costs and expenses, and reasonable attorney fees."

**B.     The Project**

Summit began work on the Project in November of 2013. As alleged, Summit's work on the Project was substantially complete, as agreed to in writing by both Ashland and its architect, in May of 2015. On November 25, 2013, Summit submitted its Application for Payment No. 1 in the full amount of $279,062.32, which requested approval and payment of the amount of $265,075.00 ("AFP No. 1"). The difference in the amounts is the 5% Retainage in the amount of $13,951.32. Ashland approved AFP No 1, paid Summit $265,075.00 on December 10, 2013, and withheld 5% as the Retainage called for in the Contract (the "AFP No. 1 Retainage"). Summit alleges, however, that, upon the payment of AFP No. 1, Ashland did not deposit the AFP No. 1 Retainage into an interest bearing escrow account with a third party, as required by Tennessee's Retainage Laws. Summit further alleges that, for each and every subsequent progress payment application submitted by Summit to Ashland, Ashland withheld Retainage but did not deposit the Retainage into an interest bearing escrow account. The total Retainage withheld by Ashland from Summit is alleged to be $320,415.74.

On October 13, 2014, via letter from counsel and pursuant to the Tennessee Retainage Laws, Summit demanded from Ashland details on the third-party Retainage escrow account that Ashland had been required to create and fund. Summit also informed Ashland that, if such escrow account had not been created with the total Retainage, Summit would seek payment of the mandatory statutory penalty of $300 per day in violation. On October 23, 2014, after receipt of the demand letter, Ashland provided evidence that it deposited an amount equal to the total

Retainage into a bank account with Max Credit Union, which also held the deed of trust on the subject property and was the lender to Ashland for the Project. The Complaint alleges that, despite the creation of this bank account, Ashland has not provided any evidence to Summit that such account was in fact a third-party escrow account as mandated by the Retainage Laws. According to Summit, therefore, "[a]s such, until and unless [Ashland] provides such evidence, the $300 a day statutory penalty did not stop accruing on October 23, 2014, and continues through the filing of this lawsuit." (Docket No. 1, ¶ 30.) Summit provided written notice to Ashland of its statutory $300 per day claim and maintains that it is therefore entitled to a monetary judgment against Ashland of, at a minimum, the $300 per day statutory penalty from December 10, 2013 to October 23, 2015, assuming the bank account created was in fact a true "escrow" account.

Summit alleges that it submitted other applications for payment to Ashland, along with change orders for work properly ordered and performed, for which Summit has allegedly not been paid despite multiple written demands. In addition, Summit alleges that many of Ashland's payments to Summit were not timely, in violation of the Contract, and that Summit is, therefore, entitled to recover interest.

Finally, Summit alleges that it is entitled to recover additional miscellaneous costs and expenses. Summit alleges that the total number of days in which Summit's work was stopped as a result of inclement weather exceeded 30 days and, therefore, Summit is entitled to payment of its extended general conditions. Summit also maintains that it incurred other expenses and costs associated with investigations and actions based on unwarranted claims by Ashland that Summit was the cause of the alarm system installed on the Project having "unwanted alarms."

### C. Summit's Claims and Suits

Summit, therefore, brings a breach of contract claim and a claim under Tennessee's Prompt Pay Act and Retainage Laws. Summit also "contemporaneously filed with the Cheatham County, Tennessee Chancery Court a lawsuit against Ashland in order to timely and properly under Tennessee lien law enforce the mechanic's lien which Summit claims and has filed against the real property of the Project." (Docket No. 1 ¶ 45.) More specifically, on January 11, 2016, at 1:30 p.m., Summit filed a mechanic's lien[2] action against the Project property in the Cheatham County Register's Office, naming not only Ashland as a defendant, but also the Trustee (Old Republic Title Company) and Bank (Max Credit Union) under a recorded Deed of Trust on the Property (since both had an interest in the Property and thus the Lien) (the "State Court Lien Action").[3] The State Court Lien Action seeks only the enforcement of the Lien in the amount of $1,074,668.74. Second, on January 11, 2016 at 5:07 pm, Summit filed the pending lawsuit in this court, naming only Ashland as a defendant (the "Federal Court Contract Action"). Because of the nature of the actions, a portion of the amount sought against Ashland in the Federal Court Contract Action could not be included in a State Court Lien Action. The Federal Court Contract Action seeks recovery in excess of $1.5 million.

### II. <u>Analysis</u>

---

[2] The mechanic's lien against the Project property was filed pursuant to Tenn. Code Ann. § 66-11-126(1) which provides in pertinent part that the lien "shall be enforced in a court of law or equity by complaint *and writ of attachment*..." (emphasis added). The writ of attachment is issued by the county Clerk and Master.

[3] The Old Republic Title and Max Credit Union have subsequently been dismissed from the State Court Lien Action. (Docket No. 19.)

Ashland argues that this case should be dismissed, without prejudice, pursuant to the *Colorado River* abstention doctrine due to the prior pending state court lawsuit. *See Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976). The Supreme Court has explained that, despite the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous, or "parallel," exercise of jurisdiction by state and federal courts. *Id.* The Sixth Circuit has stressed that the "principles underlying this doctrine 'rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (quoting *Colorado River*, 424 U.S. at 817); *Capitol Wholesale Fence Co. v. Lumber One Wood Preserving, LLC*, No. 3:13-cv-00521, 2014 WL 7336236, *2 (M.D. Tenn. Dec. 22, 2014) (same).

The *Colorado River* analysis is composed of two parts: first, the court must determine that the concurrent state and federal actions are actually parallel; and second, the court must weigh several factors identified by the Supreme Court in *Colorado River*. *Romine*, 160 F.3d at 339. "Exact parallelism" is not required; it is enough if the two proceedings are substantially similar. *Id*. (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). The Supreme Court has explained that a stay should only be granted where it would allow for a "quick and prompt resolution between the parties," such that the federal court "will have *nothing* further to do in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23-26 (1983) (emphasis added). For the cases to be considered parallel, "substantially the same parties must be contemporaneously litigating substantially the same issues," and "the critical question is whether there is a substantial

6

likelihood that the state litigation will dispose of *all* claims presented in the federal case.'" *Capitol Wholesale Fence Co.*, 2014 WL 7336236 at *3 (emphasis added) (quoting *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011)). "If there is any substantial doubt that the parallel litigation will be an adequate vehicle for the complete and prompt resolution of the issues before the parties, it would be a serious abuse of discretion for the district court to stay or dismiss a case in deference to the parallel litigation." *Chellman–Shelton v. Glenn*, 197 F. App'x 392, 394 (6th Cir. 2006). In providing further guidance to district courts, the Sixth Circuit has stated that, "in deciding whether a state action is parallel for abstention purposes, the district court must compare the issues in the federal action to the issues *actually raised* in the state court action." *Baskin v. Bath Tp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994)) (emphasis added); *accord Iron Workers of W. Pa. Pension Plan v. Caremark RX, Inc.*, No. 3:06-1097, 2007 WL 60927, at *3 (M.D. Tenn. Jan. 5, 2007). Likewise, as an exemplar, in *Crawley v. Hamilton County Com'rs*, 744 F.2d 28 (6th Cir. 1984), the court stressed, among other reasons for declining to apply *Colorado River* abstention, that there were claims in the federal suit not present in the state suit. Put simply, where there are issues raised in the federal suit that will not be resolved by the state suit, *Colorado River* abstention is inappropriate. *Id.*; *see also Iron Workers of W. Pa. Pension Plan*, 2007 WL 60927, at *3 ("Sixth Circuit precedent indicat[es] that it is the claims and issues which must be parallel, and not the parties.")

Ashland contends that "[a]s a threshold matter, the two proceedings are clearly parallel. They involve the same parties litigating identical issues arising out of the same contract. And because the claims in both lawsuits arise out of the same contract and seek the same contractual damages, the success of one lawsuit will necessarily render the second lawsuit moot." (Docket

7

No. 6, p. 4.)

While the Sixth Circuit has never directly considered the question of whether a lien foreclosure action in state court was "clearly parallel" to a separate action in federal court seeking contract damages, two other courts of appeal have.[4] In *Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 740 (4th Cir. 2002), the Fourth Circuit held that, although Gannett and Clark were both parties in a federal contract action and a state lien action, the actions "involve[d] different issues with different requisites of proof." *Id*. at 742. The court noted that the lien action required the equity court to ascertain the validity and amount of the underlying debt, which involved establishing that a contract existed for the work performed. *Id.* The "enforcement of the mechanic's lien [wa]s not, however, dependent on questions of breach of contract, which [could] be resolved only through the separate breach of contract action, in that [the parties] had not asserted their breach of contract claims in the [ ] lien action." *Id*. Furthermore, the court noted that the breach of contract action and the lien action sought different remedies: the lien action sought a lien and foreclosure on the property, whereas the breach of contract action sought compensatory damages for the alleged breach of contract. *Id*. at 743. The Eighth Circuit has similarly held that, "[w]hile both [contract and lien] actions stem from the same project and contractual relationship, each is premised on a different wrong arising from different

---

[4] There is one case in the Eastern District of Tennessee in which a Magistrate Judge was faced with a request for *Colorado River* abstention, where the two actions involved a contract action and a lien action. *See DBS Corp. v. Reid Cons. Co.*, Inc., No. 1:10-CV-154, 2010 WL3806415, at *3 (E.D. Tenn. Sept. 23, 2010). However, because the court did not find any basis for abstention based on the second part of the *Colorado River* test, it assumed *for the sake of argument* that the actions were parallel and proceeded to deny the request for those other reasons. *Id*. The court did not engage in any parallelism analysis, and so the case is of no assistance here.

occurrences." *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 535 (8th Cir. 2009). The court noted that, at the conclusion of the lien action, "the only issue decided will have been whether labor and materials were provided for which the [other party] failed to pay." *Id*. Thus, a ruling on the lien claim, "which has been asserted only in state court, will not foreclose the issue of whether [one party] breached the subcontract and whether the [other party] incurred damages as a result."[5] *Id*. at 535-36; *see also McLaughlin v. United Va. Bank*, 955 F.2d 930, 935 (4th Cir. 1992) (reversing abstention on the basis that the federal and state actions were not parallel where, "[i]n addition to party differences, it would appear that a breach of contract claim pending in the federal case is not pending, nor has it ever been pending, in the state court proceeding").

The court finds this application of the *Colorado River* doctrine by the Fourth and Eighth Circuits to be sound, particularly when viewed in light of the general guidance on abstention provided by the Sixth Circuit. The Federal Court Contract Action is premised upon (1) the common law elements of breach of contract and (2) Tenn. Code Ann. § 66-34-101 *et seq*. (Tennessee's Retainage Laws). The State Court Lien Action, on the other hand, is based on Tenn. Code Ann. § 66-11-101 *et seq*. (Tennessee's mechanic's lien laws). The State Court Lien Action seeks enforcement of a mechanic's lien in the amount of $1,074,668.74, while the Federal Court Contract Action seeks well in excess of that amount in damages generated by, among others, breach of contract, statutory penalties, and attorney's fees. Viewed through the required lens, the State Court Lien Action is based upon only one issue: attachment and the enforcement

---

[5] The court also observed that "the sources of law, required evidentiary showings, measures of damages, and treatment on appeal are also distinct for each claim." *Fru-Con Const. Corp.*, 574 F.3d at 536. For example, a lien action seeks "the unpaid cost of materials and labor actually expended, while a breach of contract action concerns the damages incurred as a result of incomplete performance." *Id*.

9

of the mechanic's lien. The lien amount *cannot* include "any interest, service charges, late fees, attorney fees, or other amounts to which the lienor may be entitled by contract or law that do not result in an improvement to the real property." Tenn. Code Ann. § 66-11-102(e). The Federal Court Contract Action, on the other hand, is not tied to the lien; it includes damages, *inter alia*, for breach of contract, statutory penalties, and attorney's fees, some of which are plainly non-recoverable in the other action.

While Ashland may believe that the amount of damages sought by Summit in the two actions overlap, it is clear that the State Court Lien Action raises issues not raised in the Federal Court Contract Action (*i.e.*, Summit could potentially prevail on the lien and have some of its federal court claims remain unresolved). More importantly, it is also clear that the Federal Court Contract Action raises issues that go beyond that contemplated by the more limited State Court Lien Action. Thus, there is substantial doubt that resolution of the State Court Lien Action would result in a *complete* resolution of the issues between the parties – the critical question under Sixth Circuit guidance. Put more simply, Summit's State Court Lien Action against Ashland does not encompass all claims and amounts pursued from Ashland by Summit in the Federal Court Contract Action. In such a situation, the issues in the two actions cannot be considered parallel and *Colorado River* abstention is not appropriate.

This case will proceed.

## **CONCLUSION**

For the foregoing reasons, the defendant's Motion to Dismiss (Docket No. 5) will be denied.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
United States District Judge